### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL SAUERS, Individually and** | **:** | **No. 3:16cv811** |
| **as Administrator of the ESTATE OF** | **:** | |
| **CAROLA R. SAUERS, Deceased,** | **:** | **(Judge Munley)** |
| **Plaintiff** | **:** | |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **STEPHEN HOMANKO, BOROUGH OF** | **:** | |
| **NESQUEHONING, and SEAN SMITH** | **:** | |
| **Defendants** | **:** | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### <u>MEMORANDUM</u>

Plaintiff Michael Sauers (hereinafter "plaintiff") avers that a local police officer violated his and his late wife's civil rights under 42 U.S.C. § 1983 (hereinafter "section 1983") when he lost control of his police cruiser and collided with plaintiff's automobile. Before the court for disposition is the police officer's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 11). For the following reasons, the court will deny the motion.

## Background

On May 12, 2014, Nesquehoning police officer Stephen Homanko (hereinafter "Defendant Homanko"), on duty in his 2009 Ford Crown Victoria police cruiser, was travelling in the southbound lane of Route 209

in Nesquehoning, Pennsylvania.  (Doc. 1, Compl. (hereinafter "Compl.") ¶ 10).  At some point, he observed a yellow Dodge Neon commit what he believed to be a potential summary traffic offense in the northbound lane of Route 209.  (Id. ¶ 11).  Based on his observation, Defendant Homanko turned his police cruiser around and pursued the Neon.  (Id. ¶ 12).  To catch up to and apprehend the Neon's driver, Defendant Homanko at times reached speeds over 100 miles-per-hour.  (Id. ¶ 14).  While attempting to negotiate a curve in the road, Defendant Homanko lost control of his police cruiser and collided with a 2007 Toyota Yaris traveling southbound on Route 209 and driven by Plaintiff Michael Sauers.  (Id. ¶¶ 15, 9).  Plaintiff endured extensive injuries as a result of the collision, and his wife, who was travelling in the front passenger seat of the vehicle, died as a result of her injuries.  (Id. ¶¶ 9, 17-18).

On May 6, 2016, plaintiff filed a seven-count complaint against Defendant Homanko, the Borough of Nesquehoning, and Nesquehoning police chief Sean Smith.  Counts I, II, and III allege civil rights violations under section 1983 against all defendants.  Counts IV, V, VI, and VII also assert respective Pennsylvania state law negligence, wrongful death, survival, and vicarious liability claims.

2

On July 11, 2016, Defendant Homanko moved to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  (Doc. 11).  The parties have briefed their respective positions and the matter is ripe for disposition.

**Jurisdiction**

As this case is brought pursuant to section 1983 for a violation of plaintiff's constitutional rights, we have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  We have supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Standard of Review**

Defendant Homanko filed a motion to dismiss plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6).  The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion.  All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, "'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.'"  Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cty. of

York, 768 F.2d 503, 506 (3d Cir. 1985)).  The plaintiff must describe

"'enough facts to raise a reasonable expectation that discovery will reveal

evidence of' [each] necessary element" of the claims alleged in the

complaint.  Phillips v. Cty. of Allegheny, 515 F.3d 224, 234 (3d Cir.

2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

Moreover, the plaintiff must allege facts that "justify moving the case

beyond the pleadings to the next stage of litigation."  Id. at 234-35.  In

evaluating the sufficiency of a complaint, the court may also consider

"matters of public record, orders, exhibits attached to the complaint and

items appearing in the record of the case."  Oshiver v. Levin, Fishbein,

Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations

omitted).  The court need not accept legal conclusions or unwarranted

factual inferences.  See Curay-Cramer v. Ursuline Acad. of Wilmington,

Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion

Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

**Discussion**

      Defendant Homanko moves to dismiss plaintiff's complaint pursuant

to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon

which relief can be granted.  Specifically, Defendant Homanko argues that

plaintiff has not pled facts sufficient to satisfy the elements of his section

1983 claim.  Alternatively, Defendant Homanko contends that he is entitled to qualified immunity.  We address these issues in turn.

## I.  Section 1983: State-Created Danger

Count II of plaintiff's complaint asserts a section 1983 claim against Defendant Homanko.  Section 1983 provides a civil remedy for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  "To state a claim under section 1983, a plaintiff must demonstrate that 'some person has deprived him of a federal right . . . [and] that the person who has deprived him of that right acted under the color of state or territorial law.'"  Halsey v. Pfeiffer, 750 F.3d 273, 290 (3d Cir. 2014) (quoting Gomez v. Toledo, 446 U.S. 635, 640 (1980)).  Thus, "[t]he threshold issue in any [section] 1983 lawsuit is whether the plaintiff has sufficiently alleged a deprivation of a constitutional right."  L.R. v. Sch. Dist. of Phila., 836 F.3d 235, 241 (3d Cir. 2016).  In the instant case, plaintiff alleges that Defendant Homanko, a Nesquehoning police officer who undisputedly acted under the color state law, violated his right to bodily integrity and his wife's right to life protected by the Due Process Clause of the Fourteenth Amendment.

"Generally, the Due Process Clause does not impose an affirmative duty upon the state to protect citizens from the acts of private individuals."

5

Sanford v. Stiles, 456 F.3d 298, 303-04 (3d Cir. 2006) (citing DeShaney v.

Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 198-200 (1989)).

"There are, however, two exceptions to this rule: the 'special relationship'

exception and the 'state-created danger' exception."  Jiminez v. All Am.

Rathskeller, Inc., 503 F.3d 247, 255 (3d Cir. 2007).   Here, plaintiff argues

only the state-created danger exception.

Under the state-created danger exception, liability under section 1983

can attach "when the harm incurred is a direct result of state action[.]"  Ye

v. U.S., 484 F.3d 634, 637 (3d Cir. 2007); see also Kneipp v. Tedder, 95

F.3d 1199, 1210-11 (3d Cir. 1996).  A plaintiff must establish the following

four elements to successfully plead a state-created danger claim:

> (1) the harm ultimately caused was foreseeable and fairly
> direct;
> (2) a state actor acted with a degree of culpability that
> shocks the conscience;
> (3) a relationship between the state and the plaintiff
> existed such that plaintiff was a foreseeable victim of the
> defendant's acts, or a member of a discrete class of
> persons subjected to the potential harm brought about by
> the state's actions, as opposed to a member of the public
> in general; and
> (4) a state actor affirmatively used his or her authority in a
> way that created a danger to the citizen or that rendered
> the citizen more vulnerable to danger than had the state
> not acted at all.

L.R., 836 F.3d at 242 (quoting Bright v. Westmoreland Cty., 443 F.3d 276,

281 (3d Cir. 2006)).  Defendant Homanko challenges only the second and

third factors of plaintiff's state-created danger claim.  We address each in turn.

### A. Culpability that Shocks the Conscience

The second factor of a state-created danger claim requires plaintiff to establish that Defendant Homanko acted with a degree of culpability that shocks the conscience.  L.R., 836 F.3d at 242 (quoting Bright, 443 F.3d at 281).  "The exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends upon the circumstances of a particular case."  Vargas v. City of Phila., 783 F.3d 962, 976 (3d Cir. 2015) (quoting Miller v. City of Phila., 174 F.3d 368, 375 (3d Cir. 1999) (internal quotations omitted)).  "The time in which the government actors had to respond to an incident is of particular significance[,]" and "[t]he level of culpability required to shock the conscience increases as the time state actors have to deliberate decreases."  Phillips, 515 F.3d at 240 (citation omitted).

For example, in hyper-pressurized environments requiring a state actor's instant judgment, the plaintiff must establish that the state actor acted with the intent to cause harm.  Sanford, 456 F.3d at 309.  Where state actors must act with some urgency but have some time to deliberate, the plaintiff must establish gross negligence or arbitrariness.  Id. at 309-310.  Finally, where state actors have time to deliberate and make

unhurried judgments, the plaintiff must establish deliberate indifference. Id. at 309. "In any event, '[m]ere negligence is not enough to shock the conscience." Vargas, 783 F.3d at 974 (quoting Sanford, 456 F.3d at 311). Thus, the Third Circuit Court of Appeals has identified three standards to determine whether state action shocks the conscience: (1) intent to cause harm; (2) gross negligence or arbitrariness; and (3) deliberate indifference. Phillips, 515 F.3d at 241 (citing Sanford, 456 F.3d at 306).

In the instant matter, Defendant Homanko argues that the "intent to cause harm" standard applies because his police pursuit of a traffic offender amounted to a hyper-pressurized situation requiring his instant judgment. Plaintiff avers that the "gross negligence or arbitrariness" standard applies because Defendant Homanko had at least some time to deliberate before and during his police pursuit. After a careful review, we agree with the plaintiff.

The United States Supreme Court has held that "high-speed chases with no intent to harm **suspects** physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983." Cty. of Sacramento v. Lewis, 523 U.S. 844, 854 (1998) (emphasis added). Expanding Lewis from injured suspects to injured bystanders, the Third Circuit Court of Appeals has determined that

8

"if a police officer is justified in giving chase, that justification insulates the officer from constitutional attack, **irrespective of who might be harmed or killed** as a consequence of the chase." Davis v. Twp. of Hillside, 190 F.3d 167, 170 n.2 (3d Cir. 1999) (emphasis added) (citations omitted).

In Lewis, police officers in separate patrol cars began their pursuit of two boys on a motorcycle after observing the motorcycle driving at a high speed. 523 U.S. at 836. After one of the officers turned on his vehicle's rotating lights and yelled at the boys to pull over, the boys sped off. Id. at 836-37. A high-speed chase ensued that lasted "[f]or 75 seconds over a course of 1.3 miles in a residential neighborhood" with "the motorcycle [weaving] in and out of oncoming traffic[.]" Id. Both the patrol cars and the motorcycle reached speeds up to 100 miles an hour. Id. The chase ended when the motorcycle approached a sharp left turn and tipped over. Id. One of the officers, unable to stop his vehicle, skidded into one of the boys and killed him on scene. Id.

In Davis, police officers in separate patrol cars observed a car stopped "in a traffic lane at a stop sign" for "an unusually long time." 190 F.3d at 169. Noting damage to the car's rear end, one officer moved alongside the car to pull it over. Id. At that point, the damaged car sped away. Id. A high-speed chase ensued where both the police cars and the

damaged car reached speeds "up to seventy miles an hour[.]"  <u>Id.</u>
Eventually, one of the patrol cars bumped the damaged car, causing its
driver to hit his head on the steering wheel and pass out.  <u>Id.</u>  The
damaged car then spun out of control and collided with two other cars, one
of which propelled into and injured a bystander standing on the sidewalk.
<u>Id.</u>

Here, plaintiff's allegations do not amount to a high-speed chase for
three reasons.  First, unlike the police officers in <u>Lewis</u> and <u>Davis</u>,
Defendant Homanko did not pursue a fleeing suspect.  Rather, when he
viewed a yellow Dodge Neon "commit a potential summary traffic
offense[,]" Defendant Homanko "turned his vehicle around and began a
pursuit[.]"  (Compl. ¶¶ 11-12).  Plaintiff does not allege that the Neon fled
from police after recognizing Defendant Homanko's pursuit, which is the
underlying fact that led to the high-speed chases in <u>Lewis</u> and <u>Davis</u>.
Indeed, the hyper-pressurized situations confronting police officers in those
cases resulted from the potential offenders' respective flights from justice.
As the <u>Lewis</u> Court explained,

> A police officer deciding whether to give chase must
> balance on one hand the need to stop a suspect and
> show that flight from the law is no way to freedom, and,
> on the other, the high-speed threat to all those within
> stopping range, be they suspects, their passengers, other
> drivers, or bystanders.

523 U.S. at 853.  In the instant matter, plaintiff does not allege any facts indicating a flight from justice.  To the contrary, he avers that police officers from a neighboring borough "pull[ed] over the yellow Dodge Neon . . . but they did  not arrest the driver or charge her with any traffic violation or any other crime[,]"  (Compl. ¶ 13), thus inferring no flight from justice whatsoever.  Simply stated, plaintiff's averments do not amount to a "balance" by Defendant Homanko that appeared so critical to the Court in <u>Lewis</u>.  Therefore, we cannot conclude at this point that Defendant Homanko encountered the same hyper-pressurized situations confronting police officers in <u>Lewis</u> and <u>Davis</u>.

Second, unlike the police officers and offenders in <u>Lewis</u> and <u>Davis</u>, only Defendant Homanko drove at high speeds.  Specifically, plaintiff avers that only Defendant Homanko "accelerated . . . to a speed in excess of 100 mph[,]" an allegation he supports by asserting that "members of the public observed . . . Homanko driving careless and at a high rate of speed **for no apparent reason**[.]"  (Compl. ¶¶ 14, 10) (emphasis added).  Again, the hyper-pressurized situations confronting police officers in <u>Lewis</u> and <u>Davis</u> resulted from both the officers and offenders engaging in the kinds of dangerous conduct commensurate with high-speed chases.  Specifically, the <u>Lewis</u> chase involved officers and offenders "reach[ing] speeds up to

11

100 miles an hour" and the offenders weaving "in and out of oncoming traffic" on a motorcycle.  523 U.S. at 836.  Similarly, the <u>Davis</u> chase involved officers and offenders reaching speeds "up to seventy miles an hour[,]" and culminated when one patrol car intentionally bumped the offender's car, causing it to veer off the road.  190 F.3d at 169.  Here, plaintiff's allegations are not analogous, as only Defendant Homanko drove at high speeds.

Finally, unlike the police officers in <u>Lewis</u> and <u>Davis</u>, plaintiff alleges that Defendant Homanko had at least some time to deliberate.  In particular, after observing the yellow Dodge Neon "commit a potential summary traffic offense" and "turn[ing] his vehicle around[,]" Defendant Homanko "decided to radio ahead to the Jim Thorpe Police Department to request that they apprehend the yellow Dodge Neon when it arrived in Jim Thorpe Borough."  (Compl. ¶¶ 11-13).  Plaintiff's complaint does not indicate that Defendant Homanko needed to make the pre-chase instant judgments required of police officers who encounter fleeing suspects, like in <u>Lewis</u> and <u>Davis</u>.   Moreover, plaintiff does not allege that Defendant Homanko had to make an instant judgment during his pursuit, such as bumping a car off the roadway like in <u>Davis</u>.

Viewing the complaint's allegations as true and in a light most favorable to plaintiff, we find that plaintiff has pled facts sufficient to distinguish Defendant Homanko's pursuit of a potential offender from the high-speed chases in <u>Lewis</u> and <u>Davis</u>, both of which required instant judgment from police officers.  While discovery may yield a different outcome, plaintiff has established at the pre-discovery phase that Defendant Homanko had at least some time to deliberate, and that his actions amount to "gross negligence or arbitrariness."[1]

## B. State-Created Danger Relationship

The third factor of a state-created danger claim requires plaintiff to establish that a relationship between the state and the plaintiff existed such that plaintiff was a foreseeable victim of Defendant Homanko's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general.  <u>L.R.</u>, 836 F.3d at 242 (quoting <u>Bright</u>, 443 F.3d at 281).  In the instant matter, Defendant Homanko argues that he had no pre-existing relationship with plaintiff, and therefore, plaintiff's complaint must be

---

[1] Defendant Homanko contends only that the "intent to cause harm" standard applies to plaintiff's section 1983 state-created danger claim.  He does not challenge whether plaintiff's allegations satisfy the "gross negligence or arbitrariness" standard, and therefore, we do not address it in any detail.

dismissed.  Plaintiff contends that he need not establish the existence of a "pre-existing" relationship, but merely "some relationship."  We agree with plaintiff.

To adequately allege the existence of a relationship in a state-created danger claim, "a plaintiff need not plead facts that show the same 'special relationship' basis for constitutional liability."  Phillips, 515 F.3d at 242 (citing Morse, 132 F.3d at 912).  Instead, a plaintiff need only establish that this relationship "contemplates some contact such that the plaintiff was a foreseeable victim of the defendant's acts in a tort sense."  Id. (quoting Morse, 132 F.3d at 912) (internal quotations omitted).  This relationship "can be 'merely' that the plaintiff was a foreseeable victim, individually or as a member of a distinct class."  Id. (citing Rivas v. City of Passaic, 365 F.3d 181, 202 (3d Cir. 2004)).  Such a relationship may also exist "where the plaintiff was a member of a discrete class of persons subjected to the potential harm brought about by the state's actions."  Id. (citing Morse, 132 F.3d at 913; Rivas, 365 F.3d at 197).

Here, plaintiff has pled facts sufficient to establish a relationship such that plaintiff was a foreseeable victim of Defendant Homanko's actions.  Specifically, plaintiff avers that Homanko "accelerated . . . to a speed in excess of 100 mph" while pursuing a potential traffic offender.  (Compl. ¶

14

14).  While travelling at this high rate of speed, Defendant Homanko "lost

control of his police cruiser . . .[,] started to spin in a clockwise direction and

crossed completely over the center line into the southbound lane of travel

directly into the path of [plaintiff's vehicle[.]"  (Id.)  In a tort sense, anyone

lawfully traveling in that southbound lane of travel could be struck and

injured by Defendant Homanko's police cruiser as a result of Defendant

Homanko losing control of the cruiser.  Plaintiff and his wife were,

therefore, foreseeable victims of Defendant Homanko's acts.  Thus, plaintiff

has established the existence of a relationship between he and his wife and

Defendant Homanko, the third element of his state-created danger claim.

Viewing the complaint in a light most favorable to plaintiff, we find that

plaintiff has alleged facts sufficient to establish a state-created danger

claim under section 1983.

## II. Qualified Immunity

In the alternative, Defendant Homanko argues that the doctrine of

qualified immunity shields him from liability under section 1983.  "Qualified

immunity shields government actors from suit 'insofar as their conduct does

not violate clearly established statutory or constitutional rights of which a

reasonable person would have known.'"  Zaloga v. Borough of Moosic, 841

F.3d 170, 174 (3d Cir. 2016) (quoting Harlow v. Fitzgerald, 457 U.S. 800,

818 (1982)).  "Thus, we ask: (1) whether the facts alleged by the plaintiff show the violation of a constitutional right; and (2) whether the law was clearly established at the time of the violation."  Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  Notably, "qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001) (internal quotations and citations omitted).

We have previously concluded that plaintiff has alleged sufficient facts to establish a violation of constitutional rights, namely his own right to bodily integrity and his wife's right to life protected by the Due Process Clause of the Fourteenth Amendment.  Thus, Defendant Homanko's entitlement to qualified immunity turns on whether these rights were "clearly established" at the time of his actions.  Estate of Lagano v. Bergen Cty. Prosecutor's Office, 769 F.3d 850, 858 (3d Cir. 2014).

A government actor's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.  Anderson v. Creighton, 483 U.S. 635, 640 (1987); Mammaro v. N.J. Div. of Child Prot. and Permanency, 814 F.3d 164, 169

(3d Cir. 2016).  This doctrine "gives government officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."  <u>City and Cty. of San Francisco, Calif. v. Sheehan</u>, — U.S. —, 135 S.Ct. 1765, 1774, 191 L.Ed.2d 856 (2015) (per curiam) (internal quotations and citations omitted); <u>George v. Rehiel</u>, 738 F.3d 562, 572 (3d Cir. 2013).

Here, plaintiff has pled facts sufficient to demonstrate that his and his wife's rights were clearly established.  As previously stated, plaintiff alleges that Defendant Homanko did not pursue a fleeing suspect, only Defendant Homanko drove at high speeds, and Defendant Homanko had at least some time to deliberate before pursuing the potential traffic offender. (Compl. ¶¶ 10-14).  Thus, any reasonable officer would have known that pursuing a potential traffic offender in excess of 100 miles-per-hour under these circumstances gives rise to a state-created danger claim.

Accordingly, at this juncture, viewing plaintiff's allegations as true and absent a fully developed factual record, qualified immunity fails to shield Defendant Homanko from individual liability under section 1983.

**Conclusion**

For the foregoing reasons, the court will deny Defendant Homanko's

motion to dismiss.  An appropriate order follows.

Date: <u>**February 14, 2017**</u>       <u>**s/ James M. Munley**</u>
                            **JUDGE JAMES M. MUNLEY**
                            **United States District Court**